**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Old Jericho Enterprise, Inc., OKY LLC, W.L.F. Automotive, Inc., Buck's, Inc., Pointe Service Center LLC, Koehnen's Standard Service, Inc., Mox LLC and Wesco, Inc.  on behalf of themselves and all others similarly situated, | Case No.  _____ |
| Plaintiffs, | |
| v. | Jury Trial Demanded |
| VISA, INC. and MASTERCARD, INC., | |
| Defendants. | |

**CLASS ACTION COMPLAINT ON BEHALF OF**
**INDIRECT-PURCHASER GASOLINE RETAILERS**

Sharon K. Robertson
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Fax: (212) 838- 7745
srobertson@cohenmilstein.com

Benjamin D. Brown
Richard A. Koffman
Matthew S. Wild
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
mwild@cohenmilstein.com

Manuel J. Dominguez
COHEN MILSTEIN SELLERS & TOLL PLLC
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL 33410
Tel:(561) 515-2604
Fax: (561) 515-1401
jdominguez@cohenmilstein.com

*Counsel for Plaintiffs*
*Additional Counsel Appear on*
*Signature Page*

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. JURISDICTION AND VENUE ..................................................................................... 3

III. THE PARTIES .............................................................................................................. 3

IV. FACTUAL BACKGROUND ........................................................................................ 6

    A.  Anatomy of a Credit-Card Transaction ................................................................. 6

    B.  Indirect Purchaser Structure .................................................................................. 8

    C.  MDL 1720 Litigation ............................................................................................ 9

    D.  No-Surcharge Rules in the United States ............................................................. 10

    E.  The No-Surcharge Rule Today ............................................................................ 12

    F.  Horizontal Conspiracy ......................................................................................... 14

V. RELEVANT MARKETS .............................................................................................. 18

    A.  Dual-Platform Credit-Card Services Market ...................................................... 18

    B.  Visa-Only and MasterCard-Only Submarkets .................................................... 20

VI. MARKET POWER ...................................................................................................... 21

VII. INJURY-IN-FACT AND SUBSTANTIAL EFFECT ON COMMERCE .............................. 23

VIII. CLASS ACTION ALLEGATIONS .......................................................................... 23

IX. CLAIMS FOR RELIEF ............................................................................................... 26

X. PRAYER FOR RELIEF ............................................................................................... 50

XI. JURY TRIAL DEMAND ............................................................................................ 50

This class action complaint is brought by plaintiffs Old Jericho Enterprise, Inc., OKY LLC, W.L.F. Automotive, Inc., Buck's, Inc., Pointe Service Center LLC, Koehnen's Standard Service, Inc., Mox LLC and Wesco, Inc. against defendants Visa, Inc. ("Visa") and MasterCard, Inc. ("MasterCard") on behalf of gasoline retailers who obtain their credit-card acceptance service via Suppliers (as that and other capitalized terms are defined below), located in the following states: Arizona, California, Connecticut, District of Columbia, Hawaii, Iowa, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, North Carolina, North Dakota, Nebraska, Nevada, New Hampshire, New Mexico, New York, Rhode Island, South Dakota, Utah, Vermont, West Virginia and Wisconsin.

## I.  INTRODUCTION

1.      Gasoline retailers operate on notoriously thin margins.  Meanwhile, on every Visa and MasterCard credit-card transaction, these merchants pay swipe fees that average roughly two percent of all sales made at the pump.  Thus, when retail gasoline customers pay with Visa or MasterCard credit cards, the profit margins for gas station owners all but disappear.

2.      The main component of the swipe fee is the so-called "interchange fee"—a non-negotiable fee that the merchant is obligated to pay to the card-issuing bank on each credit-card transaction under Visa and MasterCard rules.  The obligation to pay the interchange fee is the product of horizontal price-fixing agreements among the card-issuing banks that comprise the Visa and MasterCard networks.  The interchange fee is purely a toll that the credit-card issuing banks, in a collective exercise of monopoly power, decided to levy on each credit-card transaction.

1

3.      To maintain their elevated interchange fee levels, the banks also enacted rules to ensure that Visa and MasterCard would never have to compete against other networks, or one another, in setting interchange fees.  Indeed, Visa and MasterCard fully insulated themselves from price competition by mandating that merchants may not use the mechanism of price to induce consumers to use particular card brands or products.  Among these vertical restraints is the "No-Surcharge Rule," which flatly prevents merchants from imposing a charge (or "surcharge") for credit card transactions on the Visa or MasterCard network, substantially foreclosing inter-brand price competition.  In the absence of the No-Surcharge Rule, merchants could induce consumers to use payment products that impose lower costs upon the merchant than do Visa-branded or MasterCard-branded credit cards.  If merchants had been free during the relevant period to use credit-card surcharging to steer consumers to less costly payment options, such as debit cards, then the defendants would have faced the prospect of losing consumers and would therefore have been pressured to reduce their merchant pricing.  The No-Surcharge Rules, however, have at all times insulated defendants from such competition.

4.      This class action asserts claims under the laws of states that permit suits by "indirect purchasers."  The plaintiffs are retail gasoline businesses that purchase the defendants' card acceptance services "indirectly," either via a franchisor (such as Shell, ExxonMobil, Chevron, BP or Sunoco), the assignee of a franchisor (such as Equilon Enterprises), or a supplier or jobber (collectively, "Suppliers"), rather than dealing directly with a financial institution affiliated with Visa and MasterCard.  In these relationships, it is the Supplier that functions as the direct purchaser of the card acceptance service.  But while the Suppliers are the direct payers of interchange fees, they pass along 100% of those costs to plaintiffs and other members of the proposed class.  It is the members of the proposed class who ultimately incur the overcharge that

2

is the subject of this antitrust suit.  And these class members are thus entitled to sue as indirect

purchasers under the laws of the states represented in this action.

## II.  <u>JURISDICTION AND VENUE</u>

5.      This action is brought pursuant to the laws of Arizona, California, Connecticut,

District of Columbia, Hawaii, Iowa, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi,

North Carolina, North Dakota, Nebraska, Nevada, New Hampshire, New Mexico, New York,

Rhode Island, South Dakota, Utah, Vermont, West Virginia and Wisconsin. With respect to each

of these jurisdictions, the class member plaintiffs seek damages in excess of $5 million.

6.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness

Act, 28 U.S.C. § 1332(d), because at least one member of the class is a citizen of a different state

than one of the defendants and the amount-in-controversy exceeds $5 million.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2)

because a substantial part of the events or omissions giving rise to the claims occurred in this

district, and because the Judicial Panel on Multidistrict Litigation has previously ordered that

cases arising out of the same operative facts as the instant case be centralized in this district, in

MDL 1720.

## III. <u>THE PARTIES</u>

8.      Plaintiff Old Jericho Enterprise, Inc. d/b/a/ Turnpike Shell is a corporation

organized under the laws of the State of New York having its principal place of business in New

York, where it owns and operates a Shell-branded gas station located at 460 Jericho Turnpike,

Jericho, NY 11753.  Customers of Old Jericho Enterprise, Inc. have the option of paying for

gasoline by Visa and MasterCard credit cards, among other methods of payment.  Old Jericho Enterprise, Inc. obtains credit-card acceptance services from a Supplier.

9.      Plaintiff OKY LLC is a California limited liability company and the owner-operator of a Shell-branded gas station located at 13641 Foothill Blvd., Sylmar, California. Customers of OKY LLC have the option of paying for gasoline by Visa and MasterCard credit cards, among other methods of payment.  OKY LLC obtains credit-card acceptance services from a Supplier.

10.      Plaintiff W.L.F. Automotive, Inc. d/b/a Warren's Auto Service is a corporation organized under Illinois law, having its principal place of business in Illinois, where it is the owner-operator of a Shell-branded gas station located at 1201 Chicago Ave., Evanston, IL 60202.  Customers of Warren's Auto Service have the option of paying for gasoline by Visa and MasterCard credit cards, among other methods of payment.  Warren's Auto Service obtains credit-card acceptance services from a Supplier.

11.      Plaintiff Buck's, Inc. is a corporation organized under the laws of Nebraska, having its principal place of business in Omaha, Nebraska.  Buck's, Inc. is the owner and operator of multiple gas stations in Iowa, Nebraska and other states, operating under the Shell, BP and Phillips franchise brands.  Customers at all of Buck's, Inc.'s gas stations have the option of paying for gasoline by using Visa and MasterCard credit cards, among other methods of payment.  For all of its gas stations in Iowa and Nebraska, Buck's, Inc. obtains credit-card acceptance services from a Supplier.

12.      Plaintiff Pointe Service Center LLC is a Michigan limited liability company and the owner-operator of a Shell-branded gas station located at 18701 Mack Ave., Detroit, MI

4

48236.  Customers of Pointe Service Center LLC have the option of paying for gasoline by Visa and MasterCard credit cards, among other methods of payment.  Pointe Service Center LLC obtains credit-card acceptance services from a Supplier.

13.     Plaintiff Koehnen's Standard Service, Inc. is a corporation organized under the laws of Minnesota, having its principal place of business in Minnesota, where it owns and operates a BP-branded gas station located at 17415 Minnetonka Blvd., Minnetonka, MN 55343. Customers of Koehnen's Standard Service have the option of paying for gasoline by Visa and MasterCard credit cards, among other methods of payment.  Koehnen's Standard Service obtains credit-card acceptance services from a Supplier.

14.     Plaintiff Mox LLC is a North Carolina limited liability company and the owner-operator of a BP-branded gas station located in Wake Forest, North Carolina. Customers of Mox LLC have the option of paying for gasoline by Visa and MasterCard credit cards, among other methods of payment.  Mox LLC obtains credit-card acceptance services from a Supplier.

15.     Plaintiff Wesco, Inc. is a corporation organized under the laws of Vermont with its principal place of business in South Burlington, Vermont.  Wesco Inc. is the owner and operator of multiple gas stations in both Vermont and New Hampshire, operating under the Shell and other franchise brands.  Customers at all of Wesco Inc.'s gas stations have the option of paying for gasoline by using Visa and MasterCard credit cards, among other methods of payment.  For all of its gas stations in Vermont and New Hampshire, Wesco, Inc. obtains credit-card acceptance services from a Supplier.

16.     Defendant Visa, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.  Visa, Inc. owns and operates the Visa payment card network.

17.     Defendant MasterCard, Inc. is a Delaware corporation with its principal place of business in Purchase, New York.  MasterCard, Inc. owns and operates the MasterCard payment card network.

## IV. <u>FACTUAL BACKGROUND</u>

### A. *Anatomy of a Credit-Card Transaction*

18.     The following illustration helps explain the workings of a Visa credit card transaction, in broad strokes, and introduces some relevant concepts and terms.

19.     Say a motorist pulls into a franchisee Shell station and, at the pump, she inserts a Visa-branded credit card that was issued to her by a credit-card-issuing bank such as Wells Fargo, Bank of America or another licensed Visa issuer (an "Issuing Bank").  And let's say she then pumps $40 worth of gas.  The payment interface at the pump immediately sends an electronic record of the $40 transaction to the franchisor, U.S. Shell, whose computers then send the transaction on to U.S. Shell's "Acquiring Bank."  Sometimes also called an "acquirer," the Acquiring Bank is a bank or nonbank financial institution affiliated with the Visa network (including, e.g., Chase Paymentech, Bank of America Merchant Services and First Data, or one of their agents) with whom the merchant contracts to handle its payment card transactions.

20.     Having received the transaction message from the franchisor, the Acquiring Bank then sends the message on to the Visa network, which in turn directs the message to the motorist's Issuing Bank.  If there are sufficient funds or credit on hand and the account is in good standing, the Issuing Bank transmits an authorizing message back via the network, and the Acquiring Bank then commits to "acquire" the transaction from the merchant, for the face amount minus a discount, known as the "merchant discount fee," also referred to as the "swipe fee."  This whole process unfolds in seconds, or less, with each swipe or insertion of a card.

21.     The merchant discount fee has several components.  The majority of the merchant discount fee is comprised of the so-called "interchange fee," which is the fee that is paid to the Issuing Bank on each transaction.  The interchange fee level, or "interchange rate,"  is set centrally by Visa (or MasterCard, as the case may be) and varies according to such factors as merchant industry (e.g., gas stations vs. restaurants vs. airlines), merchant annual dollar volume levels, the type of credit card used (high-reward, regular-reward, other) and the physical device on which the transaction was entered (chip reader vs. manually keyed vs. automated gas pump, etc.), among other things.

22.     Under Visa's most recent published interchange schedule, the interchange rate applicable to our hypothetical $40 Shell transaction is 1.15% plus $0.25, which translates to an effective interchange fee of 71 cents, or fully 1.775 % of the $40 transaction.  In addition to the mandatory and non-negotiable interchange fee, the merchant discount fee (or swipe fee) includes a fee for the acquiring bank's services ("acquirer's fee") and certain fees that flow to Visa itself, for the operation of the Visa network ("network fee").  The acquirer's fee is often denominated as a fixed mark-up over interchange (a so-called "interchange-plus" contract) or may be some other pre-set amount.  In any event, the acquirer fee and the network fee typically amount to not more than 20 basis points (0.20%) in the aggregate, such that the overall discount fee on this $40 transaction would be roughly 2% (1.775% + 0.20%).

23.     If the total merchant discount fee is equal to 2% of the transaction amount, then for each $1,000 that U.S. Shell or any of its franchisees transact on Visa credit cards, the acquiring bank will pay to U.S. Shell $ 980 (the face amount minus 2%).  In practice, the acquiring bank will bundle thousands of transactions that it receives from U.S. Shell and will

periodically deposit into U.S. Shell's account money equal to 98% of the credit card sales for that period.

24.     The franchisor, U.S. Shell, then periodically (monthly or as otherwise negotiated) pays money over to the franchisee station owner.  In this periodic payment, the franchisee receives the face value of all its sales for the covered month—i.e., the total amount rung up at the pump and register—*minus* all merchant discount fees that the franchisor paid to (or, more accurately, that were retained by) the acquiring bank.  Thus, the interchange fee is passed on *en toto* by the franchisor (or other Supplier) to the gas station owner.  The franchisor makes other deductions as well, including payment for the wholesale gasoline it supplied the franchisee, and any other agreed-upon fees and expenses.

25.     Transactions effected on the MasterCard network operate the same way as Visa transactions, except that the specific interchange rate and network fee on any given transaction may differ.  For gas station transactions under MasterCard's 2020 published rate schedule, the interchange rate is a flat 1.9% or 2% depending on the rewards program associated with the particular MasterCard credit card.  (While this interchange rate is slightly higher than Visa's for a $40 transaction, it is slightly lower on a $30 gas station transaction, where the Visa effective rate equals 2%.)

26.     Likewise, this same transaction flow applies for "independent" gasoline retailers and others who may or may not be parties to any franchise arrangement but who obtain payment card acceptance services from jobbers or other entities that supply the retailer with gasoline.

**B.     *Indirect Purchaser Structure***

27.     One consequence of this structure—where the Supplier (U.S. Shell in the foregoing example) receives payment from the acquirer in the amount of total sales minus the

merchant discount—is that the Supplier is the "direct purchaser" of card acceptance services within the meaning of the federal antitrust laws and *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  The Supplier, therefore, has sole standing to pursue federal antitrust damages claims arising out of the merchant discount fee (or interchange fee) even where—as here—the Supplier passes 100% of the overcharge on to its downstream retailers.  *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968).

28.     But while franchisees and other gasoline retailers who obtain acceptance services via their Suppliers do not have standing to sue Visa or MasterCard for damages as direct purchasers of card acceptance service under the federal antitrust laws, they do have standing to sue as indirect purchasers under the laws of certain states.  The states represented in this class action have all rejected the limitation of *Illinois Brick*, whether legislatively or via common law, and allow injured persons to sue for damages irrespective of whether they were injured indirectly.

### C.     *MDL 1720 Litigation*

29.     On December 16, 2019 the U.S. District Court for the Eastern District of New York (Brodie, J.) approved a class action damages settlement in *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2014 U.S. Dist. LEXIS 142213 (E.D.N.Y. Oct. 3, 2014), a federal multi-district litigation (the "MDL 1720" case).  The merchant damages class in MDL 1720 asserted claims against Visa, MasterCard and leading banks related to the No-Surcharge Rules, other vertical restraints, and interchange price-fixing conspiracies.

30.     The MDL 1720 settlement is on behalf of *direct* purchasers only.  As the Court observed in approving the settlement, "the class definition is . . . objectively guided by federal antitrust standards," specifically including *Illinois Brick*.  Mem. & Order, MDL 1720, Dec. 16,

9

2019, Doc. 7821 at 67.  The Court made clear that the class representatives in MDL 1720 represented, and could represent, "only the first payer"—*i.e.*, only "the direct purchaser, and not every entity in the payment chain."  *Id*. (quotations omitted) (quoting Class Counsel).  Thus, it is clear that the MDL 1720 settlement is on behalf of direct purchasers only, and indirect purchasers are ineligible to receive settlement distributions in the claims process established by the Court.

31.     By the same token, the liability releases provided to the defendants in the MDL 1720 settlement do not bind indirect purchasers.  Claims against Visa and MasterCard by franchisees as indirect purchasers of Visa and Mastercard card acceptance services are not barred by the release of liability contained in the MDL 1720 settlement.

**D.     *No-Surcharge Rules in the United States***

32.     In the 1970s, when the credit-card industry was still nascent and its success far from assured, Congress was persuaded to enact a temporary ban on credit card surcharging.  *See* State Taxation of Depositories Act, Pub. L. No. 94–222, 90 Stat. 197 (1976) ("No seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means.").  Within a few years, however, as credit cards flourished, it became obvious to everyone but the credit card companies that the anti-surcharging provisions stifled competition.  "Not one single consumer group supports the proposal to continue the ban on surcharges," observed Senate Banking Chair William Proxmire.  "[But] the nation's giant credit card companies want to perpetuate the myth that credit is free."  Irvin Molotsky, *Extension of Credit Surcharge Ban*, N.Y. Times, Feb. 29, 1984, at D12.

33.     With consumer advocates, economists and Reagan Administration officials testifying that the no-surcharge statute stymied competition and supported regressive subsidies

running from poor cash payers to affluent credit-card users, Congress let the surcharge ban lapse in 1984.  As a consequence, Visa, MasterCard and American Express implemented or strengthened their own No-Surcharge Rules and other provisions restraining merchants from steering transactions to cheaper payment forms.

34.     The defendants' contractual rules against surcharging came under attack in 2005, with the filing of the complaint in *Animal Land, Inc. v. Visa U.S.A., Inc.*, No. 05-cv-1210 (N.D. Ga. May 6, 2005), which was followed by filings around the country challenging Visa and MasterCard rules.  All of these cases were then centralized in MDL 1720, along with merchant cases challenging the networks' interchange fees as the product of conspiracy.

35.     In 2010, the United States Department of Justice, Antitrust Division, decided to challenge the anti-steering rules of the three largest networks—Visa, MasterCard and American Express—as unlawful restraints on competition under the federal antitrust laws.  But, for reasons unrelated to the merits, DOJ officials determined to focus their cases on the rules banning "soft" steering practices—i.e., rules against offering discounts for using competitors' services, or against steering verbally or via signage—and to leave the more politically fraught issue of credit-card surcharging to the private litigation.

36.     On October 4, 2010, the DOJ announced that it had reached consent decrees with Visa and MasterCard under which the two networks would essentially rescind all of their soft steering bans.  The consent decree, which did not address credit-card surcharging, was approved by the district court and the networks revised their rules accordingly.  Meanwhile, unable to reach agreement with American Express, DOJ filed suit against Amex in October 2010, challenging its anti-steering rules.

37.     In 2012, Visa and MasterCard reached tentative agreements to settle the MDL

1720 class action.  In early 2013, with the settlement approval process still ongoing, Visa and

MasterCard modified their No-Surcharge Rules to read as they do today (as detailed below).  In

December 2013, the district court approved that settlement but the Second Circuit subsequently

reversed, for reasons not pertinent here.  *In re Payment Card Interchange Fee & Merch. Disc.*

*Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016).  Meanwhile, Visa and MasterCard retained their

rules as modified in 2013.

### E.     *The No-Surcharge Rule Today*

38.     The No-Surcharge Rules of Visa, MasterCard and rival credit card networks

prevent merchants from using the price mechanism to give customers incentives to use less

expensive payment products.

39.     As presently constituted, Visa's No-Surcharge Rule is set forth at § 5.6 of the

public version of its Merchant Rules, available on Visa.com.  Section 5.6.1.4 is entitled "Similar

Treatment of Visa transactions" and provides that a "Merchant must not assess a US Credit Card

Surcharge on Visa Credit Card Transactions" if (among other restrictions) the "Merchant is

prohibited or effectively prohibited by a Competitive Credit Card Brand from assessing

surcharges on the Competitive Credit Card Brand's products."  *Id.* at 347.

40.     MasterCard's No-Surcharge Rule mirrors Visa's No-Surcharge Rule.  It is set

forth at § 5.11.2 of the public version of the MasterCard Rules, dated 19 December 2019,

available on Mastercard.com.

41.     American Express is a "Competitive Credit Card Brand," within Visa Rule 5.6.1.4

and MasterCard Rule 5.11.2.  Thus, Visa and MasterCard's rules piggy-back on the no-surcharge

rule imposed by American Express.  Specifically, the Amex rule that "effectively prohibit[s]"

merchants from assessing surcharges on Amex transactions, *id.*, is found in American Express Merchant Rule §3.2, which provides that a merchant may not impose a surcharge upon an American Express credit or charge card unless the merchant also assesses the same surcharge on all "Other Payment Products." That section specifically defines "Other Payment Products" to include Visa- and MasterCard-branded debit cards.

42.     But imposing a similar surcharge on debit cards as upon Amex and other credit cards is impossible. Visa rules <u>ban</u> surcharges on debit card transactions. Visa Core Rule § 1.5.5.2 (10/19 Ed.). And even if debit card surcharges were allowed, it would not be economically rational to impose an equal surcharge on debit transactions, as would be required as a condition of surcharging credit cards under the American Express rules that Visa and MasterCard incorporate by reference. The main point of surcharging credit cards is to drive traffic to cheaper payment forms—and specifically to debit. Across the U.S., the average merchant discount rates for purchases on Visa, MasterCard and American Express all exceed 2.5%. Meanwhile, the average discount rate on debit transactions is well under 1%. So, debit is the product that merchants want to steer ***towards***, and not away from. For this reason, American Express for all intents and purposes has a flat ban on surcharging.

43.     To summarize: Visa and MasterCard permit credit-card surcharges unless the merchant is "effectively prohibited" from surcharging Amex (or other) cards. Amex only allows surcharging if the merchant also imposes the same surcharge on Visa debit card transactions. But Visa flatly bans surcharges on debit card transactions. It follows that Visa and MasterCard ban credit-card surcharges in the United States, for those merchants who accept American Express. And American Express cards are accepted by merchants who account for well over 90% of Visa and MasterCard credit-card transaction volume.

44.     Visa's and MasterCard's network No-Surcharge Rules and other vertical restraints were not (and are not) reasonably related or necessary to the operations of the Visa or MasterCard networks.  They are also more restrictive than necessary to further any legitimate business objectives of Visa or MasterCard.

**F.     *Horizontal Conspiracy***

45.     The defendants' interchange fees and vertical restraints are products of unlawful price-fixing conspiracies.

46.     From their beginnings in the 1960s, the networks now known as MasterCard and Visa were owned and operated by consortia of card-issuing "member banks."  These member banks were competitors in all other walks of their banking life.  They competed daily for consumer business as credit card issuers, and in scores of other lines of banking business as well. But they came together as a cartel to run the affairs of the payment networks they originally named "Bank Americard" and "Master Charge" and later rechristened as "Visa" and "MasterCard."  Among other things, they cooperated to establish mandatory non-negotiable schedules of payments—known as interchange fees—that merchants would be required to pay card-issuing banks out of each transaction.

47.     U.S. antitrust law allows competitors involved in a joint enterprise to cooperate with their rivals and even set prices, under certain circumstances, *see Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183 (2010), but only to the minimal extent necessary to produce the joint product or service.  What competitors may not do is agree to extract monopoly rents from customers.  And yet, that is exactly what the Visa and MasterCard membership associations did in setting interchange fees.  Acting as a cartel, they conspired to impose a non-negotiable deadweight toll on every credit-card transaction.

48.     By the early 2000s, the cartel structure of the associations was creating legal risk

for the member banks, who came to understand that they needed to restructure their

organizations to limit antitrust liability.  In 2003, MasterCard and Visa lost an antitrust lawsuit

brought by the federal government challenging certain of their network rules.  *United States v.*

*Visa U.S.A., Inc*., 163 F. Supp. 2d 322 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003).  And

while that case concerned only the ability of the associations to ban their members from issuing

American Express and Discover cards, the networks grew concerned that similar antitrust

litigation could jeopardize their interchange fees because they had effectively been adjudicated

structural conspiracies of constituent banks.

49.     Thus, in 2003, MasterCard held a meeting attended by the banks represented on

its Board of Directors where they discussed the likelihood that interchange revenues would

decline as a result of antitrust challenges.  The banks then directed MasterCard's management to

review potential alternatives.  In 2004, MasterCard made another presentation to the banks

represented on its Board of Directors, showing that a new business model could reduce the

antitrust risk while preserving the revenue from interchange fees received by the banks.

50.     By 2005, merchants and their trade associations had begun filing lawsuits, which

were aggregated in MDL 1720, challenging the networks as "structural conspiracies" or

"walking conspiracies."  In response, MasterCard made the decision that it would undergo a

restructuring in which the member banks would gradually divest themselves of ownership and

control over the network via an initial public offering.  The driving purpose of the IPO was to

avoid antitrust liability.

51.     Visa had likewise commenced studying an IPO and restructuring by 2005.  As

with MasterCard, Visa's decision was driven entirely by the desire to mitigate the antitrust

liability that comes with operating as a walking conspiracy.  Visa reasoned that the restructuring was necessary to stave off tens of billions of dollars of additional damages liability that it was incurring each year, while it operated as a cartel of banks.

52.     In the planning for both restructurings, bank executives sought and received assurances that the new "single-entity" networks would sustain the high interchange rates that the member-bank conspirators had established.  Bank executives expressed that they were "uneasy" about the "lack of any direct link between Interchange levels and the P/L of" an independent and self-interested network.  The major issuing banks thus wanted assurances from the networks that, following the IPOs, they would continue the cartel policy of extracting high interchange fees from merchants.  In response, MasterCard assured the CEO of Capital One that there would be "little to no change" in interchange fee policy, and it satisfied senior Citi bankers that MasterCard would have "the same objective, pre and post" IPO.

53.     Visa executives likewise sought to assuage bank issuer concerns that the IPO might alter the cartel's essential interchange fee strategy.  Thus, Visa's Head of Global Interchange Tolan Steele drafted an assurance to bank issuers that, "though the Directors to whom we bring interchange decisions may have changed, the process that we go through to develop and deploy interchange enhancements will remain largely the same."  The restructurings, meanwhile, gave the banks veto power over transactions that might allow large merchants (or other third parties) to acquire a substantial stake in the network and exert influence over interchange rates.  And most importantly, the restructurings left intact the No-Surcharge Rule and other vertical restraints that immunized interchange rates from competitive forces.

54.     In essence, what the IPO restructurings accomplished for the issuing banks was to create independent vehicles to manage their historical conspiracy.  The pre-IPO horizontal

agreement by a cartel of bank competitors to extract monopoly rents from merchants in the form

of interchange fees *continues* to injure merchants, even after the IPO restructurings. The IPOs

simply institutionalized the banks' conspiracy. The No-Surcharge Rules, in particular, ensure

that these monopoly rents cannot be competed away.

55.     Not only do the vertical restraints sustain and protect the product of the original

price-fixing conspiracies, but the vertical restraints are themselves the product of ongoing hub-

and-spoke conspiracies. As the District Court recognized in *Barry's Cut Rate Stores, Inc. v.*

*Visa, Inc.*, No. 05-MD-1720, 2019 U.S. Dist. LEXIS 205335, at *182 (E.D.N.Y. Nov. 20, 2019),

Visa and MasterCard (the hubs) maintain agreements with each of the major issuing banks (the

spokes), under which each such bank agrees that its cards may only be used subject to the

merchant restraints. Each bank conspirator—including Citibank, Chase, Bank of America,

Capital One, Wells Fargo and US Bank, among others— has covenanted in its agreements with

Visa and MasterCard that it will adhere to the No-Surcharge Rule and other merchant restraints,

and that it will not allow its cards to be used by merchants except at the default interchange rates

set by Visa and MasterCard.

56.     In entering and reaffirming these vertical agreements with Visa and MasterCard,

each bank was aware that the other banks were committing to the same terms. Indeed, none of

the banks would have agreed to the terms of its deal with Visa and MasterCard but for that

bank's knowledge that its competitors are similarly bound. It would "be disadvantageous for

[the] Bank [conspirators] to adhere to the restraints unless they possessed knowledge that all

others similarly situated would also adhere to those same restraints." *Barry's Cut Rate Stores*,

2019 U.S. Dist. LEXIS 205335, at *182 (upholding allegations of the hub-and-spoke

conspiracy). In fact, "it would be plainly contrary to the economic self-interest of a member

17

bank to *independently* agree to a supracompetitive price for its cards, or to restraints that prohibit merchants from *steering purchasers to its cards.*"  *Id.*

57.     The knowledge of each conspirator bank (spoke) that each other conspirator bank (spoke) has likewise agreed to the anticompetitive restraints with Visa and MasterCard (hubs) furnishes the "rim" that binds all of the anticompetitive vertical agreements between Visa and the conspirator banks into a single hub-and-spoke conspiracy with Visa and a single hub-and-spoke conspiracy with MasterCard.

## V.  RELEVANT MARKETS

58.     A relevant market exists, the product dimension of which is no broader than the network services delivered to both merchants and cardholders to facilitate credit and charge card transactions (the "Dual-Platform Credit-Card Services Market").

59.     Additionally, there exists a relevant product submarket that consists of the network services delivered to both merchants and cardholders to facilitate credit card transactions under the Visa brand (the "Dual-Platform Visa-Only Submarket"), and another such dual-platform submarket for transactions under the MasterCard brand (the "Dual-Platform MasterCard-Only Submarket").

60.     The relevant geographic dimension of the product markets and submarkets identified above, as an economic matter, is no broader than the United States.  As a legal matter, there further exist relevant geographic submarkets in each of the Class States.

### A.     *Dual-Platform Credit-Card Services Market*

61.     There are very high barriers to entry in the Dual-Platform Credit-Card Services market.  Since 1985, only Discover has entered the relevant market and its market share has

never exceeded 5%.

62.     As recommended by the U.S. Department of Justice and Federal Trade

Commission, economists typically define markets for antitrust purposes with reference to the

"SSNIP" test, asking whether a hypothetical monopolist of a particular product (or service) could

impose a "small but significant and non-transitory increase in price" on that product (typically,

on the order of 5-10%) without losing sufficient customers to render the price increase

unprofitable.  The aim of the SSNIP test is to identify the smallest product market within which a

hypothetical monopolist or cartel could impose a profitable significant increase in price.

63.     A hypothetical monopolist of all credit and charge cards would easily be able to

increase the price of credit and charge card transactions to merchants by 5-10% without losing

sufficient business to render the SSNIP unprofitable.  Likewise, the hypothetical monopolist

could increase the "two-sided price" of credit and charge card transactions (defined as the price

imposed upon merchants minus the rebates or other value provided to cardholders) by 5-10%

without losing sufficient business to render the SSNIP unprofitable.

64.     By the same token, even a substantial diminution in the "two-sided price" of a

potential substitute product will not draw sufficient business away from the hypothetical

monopolist of credit and charge cards to compel it to drop its prices—i.e., to compel the

hypothetical monopolist to compete with producers of the potential substitute—because the no-

surcharge rules explicitly prohibit the price competition that otherwise would have produced that

result.  A recent natural experiment proves this point.  Pursuant to authority conferred by the

Durbin Amendment to the Dodd-Frank Wall Street Reform and Consumer Protection Act, the

Federal Reserve in 2011 instituted a ceiling on the interchange fees on debit cards, effectively

slashing rates by well over 50%.  The cost of credit-card transactions, relative to debit-card

19

transactions, soared by far more than a 10% SSNIP (and was not meaningfully offset by benefit reductions on the cardholder side). But there was no resulting large-scale shift from credit cards over to debit. Nor did credit card networks act to staunch any such feared exodus by reducing the interchange fees for credit card acceptance or ramping up the benefits to credit card users. If debit card transactions in fact competed within a single relevant product market with credit and charge card transactions, debit would have gained substantial volume at the expense of credit, absent significant price adjustments. The fact that no such volume gains occurred in the debit card market plainly demonstrates that the debit card market is distinct from that for credit and charge cards.

**B.**     *Visa-Only and MasterCard-Only Submarkets*

65.     Courts recognize brand-specific dual-platform markets or submarkets where sufficient impediments exist to prevent customers from switching from the defendant's brand to other brands in response to price increases. In the two-sided market context, a single-brand market definition is appropriate where the defendant has designed its service to ensure that customers will not switch transactions to a competing brand in response to price increases imposed on one side of the platform or the other. *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 65-66 (2d Cir. 2019) (upholding allegations of two-sided single-brand product market).

66.     The No-Surcharge Rule and anti-steering rules of Visa and MasterCard are designed to prevent ready inter-brand switching in response to supracompetitive pricing. As a result of these restraints, merchants *cannot* respond to elevated pricing on the part of one brand by incentivizing the use of other lower-priced brands (whether evaluated on a one-sided or two-sided basis). Cardholders, meanwhile, *will not* switch because the No-Surcharge Rule insulates

20

them from the cost of Visa and MasterCard branded transactions and ensures merchants may not use price signals to induce them to switch.

67.     As a result of the No-Surcharge Rule and anti-steering rules, a SSNIP imposed on Visa-branded transactions will not cause Visa to lose sufficient business to a competitor brand to render the SSNIP unprofitable.  The same goes for MasterCard.  Accordingly, there exists both a Dual-Platform Visa-Only Submarket and a Dual-Platform MasterCard-Only Submarket.

## VI.  MARKET POWER

68.     At all relevant times, Visa has had market power in the Dual-Platform Credit-Card Services Market.  The networks' No-Surcharge Rules and other vertical restraints ensure that merchants cannot use the tool of price to induce their customers to use credit and charge cards other than Visa's.  During the Class Period, Visa has had, and has exercised, the power to maintain prices for credit card transactions substantially above competitive levels.  At present, roughly 53% of all spending on credit and charge cards in the U.S. is on Visa-branded cards.

69.     At all relevant times, MasterCard has had market power in the Dual-Platform Credit-Card Services Market.  The networks' No-Surcharge Rules and other vertical restraints ensure that merchants cannot use the tool of price to induce their customers to use credit and charge cards other than MasterCard's.  During the Class Period, MasterCard has had, and has exercised, the power to maintain prices for credit card transactions substantially above competitive levels.  At present, roughly 22% of all spending on credit and charge cards in the U.S. is on MasterCard-branded cards.  Collectively, Visa and MasterCard account for roughly 75% of all credit and charge card volume in the United States.

70.     Separate and apart from market share, Visa's and MasterCard's market power in the multi-brand credit card services market is evident from and reinforced by their No-Surcharge

21

Rules.  Because of the No-Surcharge Rules, each network is able to maintain supracompetitive interchange fees without losing customers to competitors who charge less for the same service.

71.     Visa and MasterCard further have monopoly power in the Dual-Platform Visa-Only Submarket and Dual-Platform MasterCard-Only Submarket, respectively.

72.     Not only do the defendants have market power, but extensive evidence demonstrates that the credit card networks' anti-steering rules have in fact harmed competition in the United States.  For instance, evidence adduced by the U.S. Justice Department, Antitrust Division, at a seven-week trial in 2015 illustrates how the anti-steering rules of Visa, MasterCard and American Express thwarted Discover's efforts to compete in the Dual-Platform Credit-Card Services Market by delivering services more cheaply than its competitors.

73.     Specifically, Discover "tried to develop a business model that involved charging lower prices to merchants than the other companies charged," and it offered merchants powerful incentives "if they would steer customers to Discover."  *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2293 (2018) (Breyer, J., dissenting) (quotations and citations omitted) (summarizing findings in *United States v. Am. Express Co.*, 88 F. Supp. 3d 143 (E.D.N.Y. 2015)).  However, the district court found that these well-documented "efforts failed because of" the anti-steering rules of American Express, Visa and MasterCard.  *Id.*  The district court thus "found that the [anti-steering] provisions have limited or prevented price competition among credit-card firms for the business of merchants."  *Id.* at 2294.

74.     "As a result of the [anti-steering] provisions," Justice Breyer further observed, "competitors like Discover had little incentive to lower their merchant prices, because doing so did not lead to any additional market share.  The provisions thereby suppressed [ ] competitors' incentives to offer lower prices, resulting in higher profit-maximizing prices across the network

services market. Consumers throughout the economy paid higher retail prices as a result, and they were denied the opportunity to accept incentives that merchants might otherwise have offered to use less-expensive cards." *Id*. at 2294 (ellipses, brackets and quotations omitted).

## VII. INJURY-IN-FACT AND SUBSTANTIAL EFFECT ON COMMERCE

75.     Plaintiffs and the other members of the Class have suffered injury-in-fact and have lost money or property as a result of the antitrust violations and unfair competition that are the subject of this Complaint.

76.     But for the illegal horizontal conspiracies that resulted in the establishment of elevated interchange rates before the IPO restructuring, Visa and MasterCard would not have been able to assess, and plaintiffs would not have incurred, the inflated and supra-competitive interchange fees that apply today. The high interchange fee levels that were set pre-IPO have continued post-IPO because of the anti-steering rules and No-Surcharge Rules, and further because of features in the restructuring itself that were designed to preserve the status quo ante. Moreover, were it not for the No-Surcharge Rule and other vertical restraints, Visa and MasterCard would not have been able to maintain supracompetitive interchange rates during the Class Period. Because Class-member gasoline retailers ultimately have incurred merchant discount fees that include those supracompetitive interchange fees, the members of the Class have suffered injury-in-fact.

77.     Defendants' violations of the various states' statutes set forth below substantially affected commerce in each of those states.

## VIII. CLASS ACTION ALLEGATIONS

78.     **Class Definition:**  Plaintiffs bring this action on behalf of themselves and a class consisting of businesses, further defined below, who have operated during the "Class Period" (defined below) in Arizona, California, Connecticut, District of Columbia, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Dakota, Utah, Vermont, West Virginia, and Wisconsin (the "Class States").

79.     **Class Members:**  The "Class Members" consist of all business entities located in the Class States that, during the Class Period, have taken as payment a Visa or MasterCard branded credit card in a gasoline retail transaction and have received payment for that transaction from a Supplier, rather than directly from an Acquiring Bank.

80.     **Class Period**:  The "Class Period" shall mean the period running through the termination of this action and commencing four years prior to the filing of this Complaint, subject to the following exceptions: (i) for merchants in Maine, Vermont and Wisconsin, the Class Period shall be deemed to have commenced six years before filing; and (ii) for merchants in Kansas and Mississippi, the Class Period shall be deemed to have commenced three years before filing.  For any of the Class States, the Class Period shall be deemed extended to the maximum extent allowed by any applicable principle of tolling.

81.     **Numerosity:**  Plaintiffs do not know the exact number of Class Members but upon information and belief, the Class Members number in the tens of thousands.

82.     **Typicality:**  The representative plaintiffs' claims and the defenses to those claims are typical of the claims and defenses of absent Class Members.  Each representative plaintiff was during the Class Period a gasoline retailer that obtained card acceptance services via a Supplier, and is therefore situated similarly to other Class Members.

83.     **Adequacy:**  The representative plaintiffs will fairly and adequately represent the

interests of the Class because their individual interests are consistent with, and not antagonistic

to, the interests of the other Class Members.  Moreover, plaintiffs are represented by counsel

who have the ability and financial means to prosecute this case as a class action and are

experienced antitrust and class action attorneys who have successfully litigated other cases

involving similar issues, including in class actions.

84.     **Common Questions Predominate:**  There are questions of fact and law that are

common to the Class and predominate over any questions affecting only individual class

members, including:

a.   Whether Visa entered into contracts, combinations or conspiracies to fix,
     raise, elevate, maintain or stabilize the fees for services provided in the
     relevant market;

b.   Whether MasterCard entered into contracts, combinations or conspiracies
     to fix, raise, elevate, maintain or stabilize the fees for services provided in
     the relevant market;

c.   Whether the Dual-Platform Credit-Card Services Market alleged above
     constitutes a relevant antitrust market;

d.   Whether Visa has market power in the Dual-Platform Credit-Card
     Services Market;

e.   Whether MasterCard has market power in the Dual-Platform Credit-Card
     Services Market;

f.   Whether the Dual-Platform Visa-Only Submarket and the Dual-Platform
     MasterCard Only Submarket constitute relevant antitrust markets;

g. Whether Visa and MasterCard have monopoly power in the Dual-Platform Visa-Only Submarket and Dual-Platform MasterCard-Only Submarket, respectively;

h. Whether Visa's conduct alleged in this Complaint violated the state statutes set forth below;

i. Whether MasterCard's conduct alleged in this Complaint violated the state statutes set forth below;

j. The amount of additional fees the Class incurred by reason of Visa's violations of the state statutes set forth below;

k. The amount of additional fees the Class incurred by reason of MasterCard's violations of the state statutes set forth below.

85.   **Superiority:**  Class action litigation under Rule 23(b)(3) is superior to any alternative means of resolving this controversy.  The compensation to each individual Class Member is small in relation to the expense and burden that would be required to recover that compensation in individual litigation.  Indeed, for many Class Members, a class action is the only economically feasible means of seeking redress for the violations alleged herein.

## IX.  CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**VIOLATION OF THE ARIZONA UNIFORM STATE ANTITRUST ACT,
ARIZ. REV. STAT. § 44-1401 *ET SEQ.*
(AGAINST VISA ONLY)**

86.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

87.   In violation of Ariz. Rev. Stat. § 44-1402, Visa entered into contracts,

combinations or conspiracies in unreasonable restraint of trade for credit and charge card

network services in Arizona.

88.     Visa's violations of Arizona law were flagrant and willful.

89.     The Class has been injured in its business or property by Visa's violations of

Ariz. Rev. Stat. § 44-1402.

### SECOND CLAIM FOR RELIEF

**VIOLATION OF THE ARIZONA UNIFORM STATE ANTITRUST ACT,
ARIZ. REV. STAT. § 44-1401 *ET SEQ.*
(AGAINST MASTERCARD ONLY)**

90.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

91.     In violation of Ariz. Rev. Stat. § 44-1402, MasterCard entered into contracts,

combinations or conspiracies in unreasonable restraint of trade for credit and charge card

network services in Arizona.

92.     MasterCard's violations of Arizona law were flagrant and willful.

93.     The Class has been injured in its business or property by MasterCard's violations

of Ariz. Rev. Stat. § 44-1402.

### THIRD CLAIM FOR RELIEF

**VIOLATION OF THE CALIFORNIA CARTWRIGHT ACT,
CAL. BUS. & PROF. CODE § 16700 *ET SEQ.*
(AGAINST VISA ONLY)**

94.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

95.     Visa entered into agreements that are illegal "trusts," within the meaning of Cal.

Bus. & Prof. Code § 16720.  These agreements constitute unreasonable restraints of trade and

"combination[s] of capital, skill or acts by two or more persons" in order to: "create or carry out

restrictions in trade or commerce" (§16720(a)); "prevent competition in [the] sale or purchase of merchandise" (§ 16720(c)); and "fix [a] standard or figure, whereby [the] price" of credit and charge card network services "shall be…controlled or established" (§16720(d)).

96.      Under California antitrust law, Visa's No-Surcharge Rule is illegal per se.  The No-Surcharge Rule mandates that the merchant must offer Visa-branded credit card acceptance services to the merchant's customers for zero dollars.  The No-Surcharge Rule prevents merchants from selling Visa-card acceptance services to customers for any price and thus operates as a per se unlawful resale price maintenance device.

97.      Alternatively, if the rule of reason standard applies, California antitrust law principles dictate that Visa's conduct be evaluated under the "quick look" standard described in Justice Breyer's dissenting opinion in *Ohio v. Am. Express Co.*, 138 U.S. 2274, 2295 (2018), and not the "two-sided market" standards of the majority decision.

98.      The Class has been injured in its business or property by reason of Visa's violations of Cal. Bus. & Prof. Code § 16720.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA CARTWRIGHT ACT, CAL. BUS. & PROF. CODE § 16700 *ET SEQ*. (AGAINST MASTERCARD ONLY)

99.      Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

100.      MasterCard entered into agreements that are illegal "trusts," within the meaning of Cal. Bus. & Prof. Code § 16720.  These agreements constitute unreasonable restraints of trade and "combination[s] of capital, skill or acts by two or more persons" in order to: "create or carry out restrictions in trade or commerce" (§16720(a)); "prevent competition in [the] sale or purchase of merchandise" (§ 16720(c)); and "fix [a] standard or figure, whereby [the] price" of

28

credit and charge card network services "shall be…controlled or established" (§16720(d)).

101.   Under California antitrust law, MasterCard's No-Surcharge Rule is illegal per se. The No-Surcharge Rule mandates that the merchant must offer MasterCard-branded credit card acceptance services to the merchant's customers for zero dollars.  The No-Surcharge Rule prevents merchants from selling Visa-card acceptance services to customers for any price and thus operates as a per se unlawful resale price maintenance device.

102.   Alternatively, if the rule of reason standard applies, California antitrust law principles dictate that MasterCard's conduct be evaluated under the "quick look" standard described in Justice Breyer's dissenting opinion in *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2295 (2018), and not the "two-sided market" standards of the majority decision.

103.   The Class has been injured in its business or property by reason of MasterCard's violations of Cal. Bus. & Prof. Code § 16720.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE CONNNECTICUT ANTITRUST ACT
### CONN. GEN. STAT. § 35-24 *ET SEQ.*
### (AGAINST VISA ONLY)

104.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

105.   In violation of Conn. Gen. Stat. § 35-28, Visa entered into contracts, combinations or conspiracies for the purpose or with the effect of unreasonably restraining trade for credit and charge card network services in Connecticut.

106.   The Class has been injured in its business or property by Visa's violations of Conn. Gen. Stat. § 35-28.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE CONNNECTICUT ANTITRUST ACT

**CONN. GEN. STAT. § 35-24 *ET SEQ.***
**(AGAINST MASTERCARD ONLY)**

107.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

108.     In violation of Conn. Gen. Stat. § 35-28, MasterCard entered into contracts, combinations or conspiracies for the purpose or with the effect of unreasonably restraining trade for credit and charge card network services in Connecticut.

109.     The Class has been injured in its business or property by MasterCard's violations of Conn. Gen. Stat. § 35-28.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF THE DISTRICT OF COLUMBIA ANTITRUST ACT,**
**D.C. CODE § 28-4501 *ET SEQ.***
**(AGAINST VISA ONLY)**

110.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

111.     In violation of D.C. Code § 28-4502, Visa entered into contracts, combinations in the form of trusts or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in the District of Columbia.

112.     The Class has been injured in its business or property by reason of Visa's violations of D.C. Code § 28-4502.

**EIGHTH CLAIM FOR RELIEF**

**VIOLATION OF THE DISTRICT OF COLUMBIA ANTITRUST ACT,**
**D.C. CODE § 28-4501 *ET SEQ.***
**(AGAINST MASTERCARD ONLY)**

113.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

114.    In violation of D.C. Code § 28-4502, MasterCard entered into contracts, combinations in the form of trusts or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in the District of Columbia.

115.    The Class has been injured in its business or property by reason of MasterCard's violations of D.C. Code § 28-4502.

## NINTH CLAIM FOR RELIEF

### VIOLATION OF THE HAWAII ANTITRUST STATUTE
### HAW. REV. STAT. § 480-4
### (AGAINST VISA ONLY)

116.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

117.    In violation of Haw. Rev. Stat. § 480-4, Visa entered into contracts, combinations in the form of trusts or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in Hawaii.

118.    The Class has been injured in its business or property by reason of Visa's violations of Haw. Rev. Stat. § 480-4.

## TENTH CLAIM FOR RELIEF

### VIOLATION OF THE HAWAII ANTITRUST STATUTE
### HAW. REV. STAT. § 480-4
### (AGAINST MASTERCARD ONLY)

119.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

120.    In violation of Haw. Rev. Stat. § 480-4, MasterCard entered into contracts, combinations in the form of trusts or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in Hawaii.

121.    The Class has been injured in its business or property by reason of MasterCard's

violations of Haw. Rev. Stat. § 480-4.

## ELEVENTH CLAIM FOR RELIEF

**VIOLATION OF THE ILLINOIS ANTITRUST ACT,
740 ILCS 10/3 *ET SEQ.*
(AGAINST VISA ONLY)**

122.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

123.     Visa made contracts with, or engaged in combinations or conspiracies with, other persons who are, or but for a prior agreement would be, a competitor of such person for the purpose or with the effect of fixing, controlling or maintaining the price or rate charged for any fee charged or paid for credit and charge card network services performed by the parties thereto in Illinois.

124.     Visa fixed, controlled or maintained the sale or supply of credit and charge card network services, for the purpose or with the effect of fixing, controlling or maintaining the price or rate charged or paid for credit and charge card network services in Illinois.

125.     By contract, combination or conspiracy, Visa unreasonably restrained trade or commerce for credit and charge card network services in Illinois.

126.     By reason of the foregoing, Visa violated the Illinois Antitrust Act, 740 ILCS 10/3.

127.     Visa's violations of the Illinois Antitrust Act were willful and flagrant.

128.     The Class has been injured in its business or property by reason of Visa's violations of the Illinois Antitrust Act, 740 ILCS 10/3.

## TWELFTH CLAIM FOR RELIEF

**VIOLATION OF ILLINOIS ANTITRUST ACT,
740 ILCS 10/3 *ET SEQ.*
(AGAINST MASTERCARD ONLY)**

129.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

130.     MasterCard made contracts with, or engaged in combinations or conspiracies with, other persons who are, or but for a prior agreement would be, a competitor of such person for the purpose or with the effect of fixing, controlling or maintaining the price or rate charged for any fee charged or paid for credit and charge card network services performed by the parties thereto in Illinois.

131.     MasterCard fixed, controlled or maintained the sale or supply of credit and charge card network services, for the purpose or with the effect of fixing, controlling or maintaining the price or rate charged or paid for credit and charge card network services in Illinois.

132.     By contract, combination or conspiracy, MasterCard unreasonably restrained trade or commerce for credit and charge card network services in Illinois.

133.     By reason of the foregoing, MasterCard violated the Illinois Antitrust Act, 740 ILCS 10/3.

134.     MasterCard's violations of the Illinois Antitrust Act were willful and flagrant.

135.     The Class has been injured in its business or property by reason of MasterCard's violations of the Illinois Antitrust Act, 740 ILCS 10/3.

## THIRTEENTH CLAIM FOR RELIEF

**VIOLATION OF IOWA COMPETITION LAW**
**IOWA CODE § 553.1 *ET SEQ.***
**(AGAINST VISA ONLY)**

136.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

137.     In violation of Iowa Code § 553.4, Visa entered into contracts, combinations and conspiracies with others that unreasonably restrained trade or commerce in the market for credit and charge card network services in Iowa.

138.     Visa's violations of Iowa Code § 553.4 were willful and flagrant.

139.     The Class has been injured by reason of Visa's violations of the Iowa Competition Law, Iowa Code § 553.1, *et seq.*

## FOURTEENTH CLAIM FOR RELIEF

### VIOLATION OF IOWA COMPETITION LAW
### IOWA CODE § 553.1 *ET SEQ.*
### (AGAINST MASTERCARD ONLY)

140.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

141.     In violation of Iowa Code § 553.4, MasterCard entered into contracts, combinations and conspiracies with others that unreasonably restrained trade or commerce in the market for credit and charge card network services in Iowa.

142.     MasterCard's violations of Iowa Code § 553.4 were willful and flagrant.

143.     The Class has been injured by reason of MasterCard's violations of the Iowa Competition Law, Iowa Code § 553.1, *et seq.*

## FIFTHTEENTH CLAIM FOR RELIEF

### VIOLATION OF THE KANSAS RESTRAINT OF TRADE ACT,
### KAN. STAT. ANN. § 50-101 *ET SEQ.*
### (AGAINST VISA ONLY)

144.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

145.     In violation of Kan. Stat. Ann. § 50-101, *et seq.*, Visa entered into arrangements, contracts, agreements, trusts or combinations between others made with a view toward

preventing or which tend to prevent full and free competition for the provision of credit and charge card network services in Kansas.

146.     The Class has been injured by reason of Visa's violations of the Kansas Restraint of Trade Act, Kan. Stat. Ann. § 50-101, *et seq.*

### SIXTEENTH CLAIM FOR RELIEF

### VIOLATION OF THE KANSAS RESTRAINT OF TRADE ACT, KAN. STAT. ANN. § 50-101 *ET SEQ.* (AGAINST MASTERCARD ONLY)

147.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

148.     In violation of Kan. Stat. Ann. § 50-101, *et seq.*, MasterCard entered into arrangements, contracts, agreements, trusts or combinations between others made with a view toward preventing or which tend to prevent full and free competition for the provision of credit and charge card network services in Kansas.

149.     The Class has been injured by reason of MasterCard's violations of the Kansas Restraint of Trade Act, Kan. Stat. Ann. § 50-101, *et seq.*

### SEVENTEENTH CLAIM FOR RELIEF

### VIOLATION OF MAINE'S MONOPOLIES & PROFITEERING LAW ME. REV. STAT. ANN. TIT. 10, § 1101 *ET SEQ.* (AGAINST VISA ONLY)

150.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

151.     In violation of ME. Rev. Stat. Ann. tit. 10, § 1101, Visa entered into contracts, combinations in the forms of trust or otherwise and conspiracies in unreasonable restraint of trade for credit and charge card network services.

152.     The Class has been injured in its business or property by reason of Visa's

violations of ME. Rev. Stat. Ann. tit. 10, § 1101.

## EIGHTTEENTH CLAIM FOR RELIEF

### VIOLATION OF MAINE'S MONOPOLIES & PROFITEERING LAW
### ME. REV. STAT. ANN. TIT. 10, § 1101 *ET SEQ.*
### (AGAINST MASTERCARD ONLY)

153.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

154.    In violation of ME. Rev. Stat. Ann. tit. 10, § 1101, MasterCard entered into contracts, combinations in the forms of trust or otherwise and conspiracies in unreasonable restraint of trade for credit and charge card network services.

155.    The Class has been injured in its business or property by reason of MasterCard's violations of ME. Rev. Stat. Ann. tit. 10, § 1101.

## NINETEENTH CLAIM FOR RELIEF

### VIOLATION OF MICHIGAN ANTITRUST REFORM ACT
### MICH. COMP. LAWS ANN. § 445.772
### (AGAINST VISA ONLY)

156.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

157.    In violation of Mich. Comp. Laws Ann. § 445.772, Visa entered into contracts, combinations or conspiracies in unreasonable restraint of trade in the market for credit and charge card network services in Michigan.

158.    Visa's violations of Mich. Comp. Laws Ann. § 445.772 were flagrant and willful.

159.    The Class has been injured in its business or property by Visa's violations of Mich. Comp. Laws Ann. § 445.772.

## TWENTIETH CLAIM FOR RELIEF

**VIOLATION OF MICHIGAN ANTITRUST REFORM ACT**
**MICH. COMP. LAWS ANN. § 445.772**
**(AGAINST MASTERCARD ONLY)**

160.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

161.    In violation of Mich. Comp. Laws Ann. § 445.772, MasterCard entered into contracts, combinations or conspiracies in unreasonable restraint of trade in the market for credit and charge card network services in Michigan.

162.    MasterCard's violations of Mich. Comp. Laws Ann. § 445.772 were flagrant and willful.

163.    The Class has been injured in its business or property by MasterCard's violations of Mich. Comp. Laws Ann. § 445.772.

**TWENTY-FIRST CLAIM FOR RELIEF**

**VIOLATION OF MINNESOTA ANTITRUST LAW**
**MINN. STAT. § 325D.49 *ET SEQ.***
**(AGAINST VISA ONLY)**

164.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

165.    In violation of Minn. Stat. § 325D.51, Visa entered into contracts, combinations or conspiracies in unreasonable restraint of trade that caused the price of credit and charge card network services in Minnesota to increase.

166.    The Class was injured by Visa's violations of Minn. Stat. § 325D.51.

**TWENTY-SECOND CLAIM FOR RELIEF**

**VIOLATION OF MINNESOTA ANTITRUST LAW**
**MINN. STAT. § 325D.49 *ET SEQ.***
**(AGAINST MASTERCARD ONLY)**

167.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

168.     In violation of Minn. Stat. § 325D.51, MasterCard entered into contracts, combinations or conspiracies in unreasonable restraint of trade that caused the price of credit and charge card network services in Minnesota to increase.

169.     The Class was injured by MasterCard's violations of Minn. Stat. § 325D.51.

## TWENTY-THIRD CLAIM FOR RELIEF

**VIOLATION OF MISSISSIPPI ANTITRUST STATUTE**
**MISS. CODE ANN. § 75-21-1 *ET SEQ.***
**(AGAINST VISA ONLY)**

170.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

171.     Visa entered into combinations, contracts, understandings or agreements, expressed or implied, between two or more persons, corporations or firms or associations of persons, or between any one or more of either with one or more of the others, which unreasonably restrained trade for credit and charge card network services in Mississippi.

172.     By reason of the foregoing, Visa violated Miss. Code Ann. § 75-21-1 *et seq.*

173.     The Class has been injured by, and by the effects of, Visa's violations of Miss. Code Ann. § 75-21-1 *et seq.*

## TWENTY-FOURTH CLAIM FOR RELIEF

**VIOLATION OF MISSISSIPPI ANTITRUST STATUTE**
**MISS. CODE ANN. § 75-21-1 *ET SEQ.***
**(AGAINST MASTERCARD ONLY)**

174.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

175.     MasterCard entered into combinations, contracts, understandings or agreements, expressed or implied, between two or more persons, corporations or firms or associations of

persons, or between any one or more of either with one or more of the others, which unreasonably restrained trade for credit and charge card network services in Mississippi.

176.     By reason of the foregoing, MasterCard violated Miss. Code Ann. § 75-21-1 *et seq.*

177.     The Class has been injured by, and by the effects of, MasterCard's violations of Miss. Code Ann. § 75-21-1 *et seq.*

## TWENTY-FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE NEBRASKA JUNKIN ACT
### NEB. REV. STAT. § 59-801, *ET SEQ.*
### (AGAINST VISA ONLY)

178.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

179.     In violation of Neb. Rev. Stat. § 59-801, Visa has entered into contracts, combinations in the form of trust or otherwise or conspiracies which unreasonably restrained trade for credit and charge card network services in Nebraska.

180.     The Class has been injured in its business or property by Visa's violations of Neb. Rev. Stat. § 59-801.

## TWENTY-SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE NEBRASKA JUNKIN ACT
### NEB. REV. STAT. § 59-801, *ET SEQ.*
### (AGAINST MASTERCARD ONLY)

181.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

182.     In violation of Neb. Rev. Stat. § 59-801, MasterCard has entered into contracts, combinations in the form of trust or otherwise or conspiracies which unreasonably restrained trade for credit and charge card network services in Nebraska.

183.     The Class has been injured in its business or property by MasterCard's violations of Neb. Rev. Stat. § 59-801.

**TWENTY-SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF THE NEVADA UNFAIR TRADE PRACTICE ACT**
**NEV. REV. STAT. § 598A.060**
**(AGAINST VISA ONLY)**

184.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

185.     In violation of Nev. Rev. Stat. § 598A.060, Visa entered into contracts, combinations or conspiracies which substantially lessened competition and unreasonably restrained trade for credit and charge card network services in Nevada.

186.     The Class has been injured in its business or property by reason of Visa's violations of Nev. Rev. Stat. § 598A.060.

**TWENTY-EIGHTH CLAIM FOR RELIEF**

**VIOLATION OF THE NEVADA UNFAIR TRADE PRACTICE ACT**
**NEV. REV. STAT. § 598A.060**
**(AGAINST MASTERCARD ONLY)**

187.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

188.     In violation of Nev. Rev. Stat. § 598A.060, MasterCard entered into contracts, combinations or conspiracies which substantially lessened competition and unreasonably restrained trade for credit and charge card network services in Nevada.

189.     The Class has been injured in its business or property by reason of MasterCard's violations of Nev. Rev. Stat. § 598A.060.

**TWENTY-NINETH CLAIM FOR RELIEF**

**VIOLATION OF THE NEW HAMPSHIRE ANTITRUST STATUTE**

**N.H. REV. STAT. ANN. § 356,** *ET SEQ.*
**(AGAINST VISA ONLY)**

190.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

191.    In violation of N.H. Rev. Stat. Ann. § 356:2, Visa entered into contracts, combinations or conspiracies that unreasonably restrained trade and controlled and maintained rates and fees charged for credit and charge card network services in New Hampshire.

192.    Visa's violations of N.H. Rev. Stat. Ann. § 356:2 were willful and flagrant.

193.    The Class has been injured in its business or property by reason of VISA's violations of N.H. Rev. Stat. Ann. § 356:2.

**THIRTIETH CLAIM FOR RELIEF**

**VIOLATION OF THE NEW HAMPSHIRE ANTITRUST STATUTE**
**N.H. REV. STAT. ANN. § 356,** *ET SEQ.*
**(AGAINST MASTERCARD ONLY)**

194.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

195.    In violation of N.H. Rev. Stat. Ann. § 356:2, MasterCard entered into contracts, combinations or conspiracies that unreasonably restrained trade and controlled and maintained rates and fees charged for credit and charge card network services in New Hampshire.

196.    MasterCard's violations of N.H. Rev. Stat. Ann. § 356:2 were willful and flagrant.

197.    The Class has been injured in its business or property by reason of MasterCard's violations of N.H. Rev. Stat. Ann. § 356:2.

**THIRTY-FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE NEW MEXICO ANTITRUST ACT**
**N.M. STAT. ANN. § 57-1-1** *ET SEQ.*

41

**(AGAINST VISA ONLY)**

198.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

199.     In violation of N.M. Stat. Ann. § 57-1-1, Visa entered into contracts, agreements, combinations or conspiracies that unreasonably restrained trade for credit and charge card network services in New Mexico.

200.     The Class has been injured in its business or property by Visa's violations of N.M. Stat. Ann. § 57-1-1.

## THIRTY-SECOND CLAIM FOR RELIEF

### VIOLATION OF THE NEW MEXICO ANTITRUST ACT
### N.M. STAT. ANN. § 57-1-1 *ET SEQ.*
### (AGAINST MASTERCARD ONLY)

201.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

202.     In violation of N.M. Stat. Ann. § 57-1-1, MasterCard entered into contracts, agreements, combinations or conspiracies that unreasonably restrained trade for credit and charge card network services in New Mexico.

203.     The Class has been injured in its business or property by MasterCard's violations of N.M. Stat. Ann. § 57-1-1.

## THIRTY-THIRD CLAIM FOR RELIEF

### VIOLATION OF THE NEW YORK DONNELLY ACT
### N.Y. GEN. BUS. LAW § 340
### (AGAINST VISA ONLY)

204.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

205.     In violation of N.Y. Gen. Bus. Law § 340, Visa entered into contracts,

agreements, arrangements or combinations that have unreasonably restrained trade in the competition for credit and charge card network services in New York.

206.     The Class has sustained damages by reason of Visa's violations of N.Y. Gen. Bus. Law § 340.

## THIRTY-FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE NEW YORK DONNELLY ACT
### N.Y. GEN. BUS. LAW § 340
### (AGAINST MASTERCARD ONLY)

207.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

208.     In violation of N.Y. Gen. Bus. Law § 340, MasterCard entered into contracts, agreements, arrangements or combinations that have unreasonably restrained trade in the competition for credit and charge card network services in New York.

209.     The Class has sustained damages by reason of MasterCard's violations of N.Y. Gen. Bus. Law § 340.

## THIRTY-FIFTH CLAIM FOR RELIEF

### VIOLATION OF CHAPTER 75 OF NORTH CAROLINA OF GENERAL STATUTES
### N.C. GEN. STAT. § 75-1, *ET SEQ.*
### (AGAINST VISA ONLY)

210.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

211.     In violation of N.C. Gen. Stat. § 75-1, Visa entered into contracts, combinations in the form of trust or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in North Carolina.

212.     The Class has been injured by Visa's violations of N.C. Gen. Stat. § 75-1.

## THIRTY-SIXTH CLAIM FOR RELIEF

**VIOLATION OF CHAPTER 75 OF NORTH CAROLINA OF GENERAL STATUTES
N.C. GEN. STAT. § 75-1, *ET SEQ.*
(AGAINST MASTERCARD ONLY)**

213.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

214.    In violation of N.C. Gen. Stat. § 75-1, MasterCard entered into contracts, combinations in the form of trust or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in North Carolina.

215.    The Class has been injured by MasterCard's violations of N.C. Gen. Stat. § 75-1.

## THIRTY-SEVENTH CLAIM FOR RELIEF

**VIOLATION OF THE NORTH DAKOTA UNIFORM STATE ANTITRUST ACT
N.D. CENT. CODE § 51-08.1, *ET SEQ.*
(AGAINST VISA ONLY)**

216.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

217.    In violation of N.D. Cent. Code § 51-08.1-02, Visa entered into contracts, combinations or conspiracies in unreasonable restraint of trade in the market for credit and charge card network services in North Dakota.

218.    Visa's violations of N.D. Cent. Code § 51-08.1-02 were flagrant and willful.

219.    The Class has been injured in its business or property by Visa's violations of N.D. Cent. Code § 51-08.1-02.

## THIRTY-EIGHTH CLAIM FOR RELIEF

**VIOLATION OF THE NORTH DAKOTA UNIFORM STATE ANTITRUST ACT
N.D. CENT. CODE § 51-08.1, *ET SEQ.*
(AGAINST MASTERCARD ONLY)**

220.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

221.     In violation of N.D. Cent. Code § 51-08.1-02, MasterCard entered into contracts, combinations or conspiracies in unreasonable restraint of trade in the market for credit and charge card network services in North Dakota.

222.     MasterCard's violations of N.D. Cent. Code § 51-08.1-02 were flagrant and willful.

223.     The Class has been injured in its business or property by MasterCard's violations of N.D. Cent. Code § 51-08.1-02.

**THIRTY-NINETH CLAIM FOR RELIEF**

**VIOLATION OF THE RHODE ISLAND ANTITRUST ACT
R.I. GEN. LAWS § 6-36-1, *ET SEQ.*
(AGAINST VISA ONLY)**

224.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

225.     In violation of R.I. Gen. Laws § 6-36-4, Visa entered into contracts, combinations or conspiracies in unreasonable restraint of trade for credit and charge card network services in Rhode Island.

226.     The Class has been injured in its business or property by reason of Visa's violations of R.I. Gen. Laws § 6-36-4.

**FORTIETH CLAIM FOR RELIEF**

**VIOLATION OF THE RHODE ISLAND ANTITRUST ACT
R.I. GEN. LAWS § 6-36-1, *ET SEQ.*
(AGAINST MASTERCARD ONLY)**

227.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

228.     In violation of R.I. Gen. Laws § 6-36-4, MasterCard entered into contracts, combinations or conspiracies in unreasonable restraint of trade for credit and charge card

network services in Rhode Island.

229.    The Class has been injured in its business or property by reason of MasterCard's

violations of R.I. Gen. Laws § 6-36-4.

## FORTY-FIRST CLAIM FOR RELIEF

### VIOLATION OF THE SOUTH DAKOTA ANTITRUST STATUTE
### S.D. CODIFIED LAWS § 37-1-3.1, *ET SEQ.*
### (AGAINST VISA ONLY)

230.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

231.    In violation of S.D. Codified Laws § 37-1-3.1, Visa entered into contracts,

combinations or conspiracies in unreasonable restraint of trade for credit and charge card

network services in South Dakota.

232.    The Class has been injured in its business or property by Visa's violations of

S.D. Codified Laws § 37-1-3.1.

## FORTY-SECOND CLAIM FOR RELIEF

### VIOLATION OF THE SOUTH DAKOTA ANTITRUST STATUTE
### S.D. CODIFIED LAWS § 37-1-3.1, *ET SEQ.*
### (AGAINST MASTERCARD ONLY)

233.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

234.    In violation of S.D. Codified Laws § 37-1-3.1, MasterCard entered into

contracts, combinations or conspiracies in unreasonable restraint of trade for credit and charge

card network services in South Dakota.

235.    The Class has been injured in its business or property by MasterCard's violations

of S.D. Codified Laws § 37-1-3.1.

## FORTY-THIRD CLAIM FOR RELIEF

**VIOLATION OF THE UTAH ANTITRUST ACT**
**UTAH CODE ANN. § 76-10-911, *ET SEQ.***
**(AGAINST VISA ONLY)**

236.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

237.     In violation of Utah Code Ann. § 76-10-3104, Visa entered into contracts, combinations in the form of trust or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in Utah.

238.     The Class has been injured in its business or property by Visa's violation of Utah Code Ann. § 76-10-3104.

**FORTY-FOURTH CLAIM FOR RELIEF**

**VIOLATION OF THE UTAH ANTITRUST ACT**
**UTAH CODE ANN. § 76-10-911, *ET SEQ.***
**(AGAINST MASTERCARD ONLY)**

239.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

240.     In violation of Utah Code Ann. § 76-10-3104, MasterCard entered into contracts, combinations in the form of trust or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in Utah.

241.     The Class has been injured in its business or property by MasterCard's violation of Utah Code Ann. § 76-10-3104.

**FORTY-FIFTH CLAIM FOR RELIEF**

**VIOLATION OF THE VERMONT CONSUMER FRAUD ACT**
**9 V.S.A. § 2453**
**(AGAINST VISA ONLY)**

242.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

47

243.     In violation of 9 V.S.A. § 2453, Visa engaged in unfair methods of competition and unfair acts or practices in connection with the provision of credit and charge card network services in Vermont.

244.     The Class has sustained damages or injury as a result of Visa's violations of 9 V.S.A. § 2453.

### FORTY-SIXTH CLAIM FOR RELIEF

**VIOLATION OF THE VERMONT CONSUMER FRAUD ACT**
**9 V.S.A. § 2453**
**(AGAINST MASTERCARD ONLY)**

245.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

246.     In violation of 9 V.S.A. § 2453, MasterCard engaged in unfair methods of competition and unfair acts or practices in connection with the provision of credit and charge card network services in Vermont.

247.     The Class has sustained damages or injury as a result of MasterCard's violations of 9 V.S.A. § 2453.

### FORTY-SEVENTH CLAIM FOR RELIEF

**VIOLATION OF THE WEST VIRGINIA ANTITRUST ACT**
**W. VA. CODE § 47-18-1, *ET SEQ*.**
**(AGAINST VISA ONLY)**

248.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

249.     In violation of W. VA. Code § 47-18-3, Visa entered into contracts, combinations in the form of trusts or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in West Virginia and for the purpose or effect of controlling or maintaining the rate or fee charged for credit and charge card network services in

West Virginia.

250.     The Class has been injured in its business or property by reason of Visa's violations of W. VA. Code § 47-18-3.

## FORTY-EIGHTH CLAIM FOR RELIEF

### VIOLATION OF THE WEST VIRGINIA ANTITRUST ACT
### W. VA. CODE § 47-18-1, *ET SEQ.*
### (AGAINST MASTERCARD ONLY)

251.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

252.     In violation of W. VA. Code § 47-18-3, MasterCard entered into contracts, combinations in the form of trusts or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in West Virginia and for the purpose or effect of controlling or maintaining the rate or fee charged for credit and charge card network services in West Virginia.

253.     The Class has been injured in its business or property by reason of MasterCard's violations of W. VA. Code § 47-18-3.

## FORTY-NINTH CLAIM FOR RELIEF

### VIOLATION OF THE WISCONSIN ANTITRUST ACT
### WIS. STAT. ANN. § 133.01, *ET SEQ.*
### (AGAINST VISA ONLY)

254.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

255.     In violation of Wis. Stat. Ann. § 133.03, Visa entered into contracts, combinations in the form of trusts or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in Wisconsin.

256.     The Class has been injured by reason of Visa's violations of Wis. Stat. Ann. §

133.03.

## FIFTIETH CLAIM FOR RELIEF

### VIOLATION OF THE WISCONSIN ANTITRUST ACT
### WIS. STAT. ANN. § 133.01, *ET SEQ.*
### (AGAINST MASTERCARD ONLY)

257.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

258.    In violation of Wis. Stat. Ann. § 133.03, MasterCard entered into contracts, combinations in the form of trusts or otherwise or conspiracies in unreasonable restraint of trade for credit and charge card network services in Wisconsin.

259.    The Class has been injured by reason of MasterCard's violations of Wis. Stat. Ann. § 133.03.

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request an Order:

      a.    Certifying this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3);

      b.    Awarding the Class the maximum monetary relief allowed under each of the state statutes set forth above;

      c.    Awarding the Class pre-judgment and post-judgment interest;

      d.    Awarding the Class its reasonable attorneys' fees and costs of suit; and

      e.    Granting such other and further relief as the Court deems just and proper.

## XI.  JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

May 29, 2020                                  Respectfully submitted,

                                             /s/Sharon K.  Robertson
                                             Sharon K. Robertson
                                             **COHEN MILSTEIN SELLERS & TOLL
                                             PLLC**
                                             88 Pine Street, 14th Floor
                                             New York, NY 10005
                                             Tel: (212) 838-7797
                                             Fax: (212) 838- 7745
                                             srobertson@cohenmilstein.com

                                             Benjamin D. Brown
                                             Richard A. Koffman
                                             Matthew S. Wild
                                             **COHEN MILSTEIN SELLERS & TOLL
                                             PLLC**
                                             1100 New York Avenue, N.W., Suite 500
                                             Washington, D.C. 20005
                                             Tel: (202) 408-4600
                                             Fax: (202) 408-4699
                                             bbrown@cohenmilstein.com
                                             rkoffman@cohenmilstein.com
                                             mwild@cohenmilstein.com

                                             Manuel J. Dominguez
                                             **COHEN MILSTEIN SELLERS & TOLL
                                             PLLC**
                                             2925 PGA Blvd., Suite 200
                                             Palm Beach Gardens, FL 33410
                                             Tel:(561) 515-2604
                                             Fax: (561) 515-1401
                                             jdominguez@cohenmilstein.com

                                             Robert W. Cohen
                                             Mariko Taenaka
                                             **LAW OFFICES OF ROBERT W.
                                             COHEN, P.C.**
                                             1901 Avenue of the Stars, Suite 1900
                                             Los Angeles, CA 90067
                                             Tel: (310) 282-7586
                                             Fax: (310) 282-7589
                                             rwc@robertwcohenlaw.com

Edward S. Zusman
Kevin K. Eng
**MARKUN ZUSMAN FRENIERE
COMPTON LLP**
465 California Street, Suite 500
San Francisco, CA 94104
Tel: (415) 438-4515
Fax: (415) 434-4505
ezusman@mzclaw.com

David Song
Tracey Kitzman
**SONG P.C.**
26 Broadway, Fl 8
New York, NY 10004
Tel:  212-599-0700


*Attorneys for Plaintiffs*